(No. 51895

*In re* PETER WONAIS, Attorney, Respondent.

*Opinion filed December 20, 1979.*

CLARK, J., concurring.
UNDERWOOD, WARD, and RYAN, JJ., dissenting.

John C. O'Malley, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Hart, of Chicago, for respondent.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

On July 28, 1976, this court allowed the motion of respondent, Peter Wonais, licensed to practice law in 1974, to strike his name from the roll of attorneys. On June 6, 1978, pursuant to Supreme Court Rule 767 (65 Ill. 2d R. 767), he filed a petition for reinstatement. A panel of the Hearing Board of the Attorney Registration and Disciplinary Commission recommended that the petition for reinstatement be allowed. The Administrator filed exceptions and the Review Board of the Attorney Registration and Disciplinary Commission, with one member dissenting, affirmed the recommendation. Pursuant to Supreme Court Rule 753(e) (65 Ill. 2d R. 753(e)), we allowed the Administrator's petition for leave to file exceptions and permitted the filing of briefs, and oral argument.

On October 24, 1974, respondent was admitted to the Illinois Bar, and shortly thereafter was appointed an assistant public defender. In 1976 he was assigned to represent an indigent person who had been charged with three counts of burglary. Respondent negotiated an agreement with the State's Attorney whereby the defendant would enter a plea of guilty to one count, the remaining two counts would be stricken with leave to reinstate, and a sentence of probation imposed. In response to the defendant's expressed concern that the charges might be reinstated, respondent represented to the defendant that for $700 in cash, to be passed on to a State's Attorney, the remaining counts would not be reinstated. The alleged involvement of a State's Attorney was merely a ruse, since respondent intended to keep the money. The defendant agreed to respondent's proposal and on June 4, 1976, respondent went to the defendant's

home to receive payment. He was there arrested and charged with solicitation to commit bribery. Shortly thereafter he resigned from his position as a public defender and moved that his name be stricken from the roll of attorneys.

On December 19, 1976, respondent pleaded guilty to the offense of solicitation to commit bribery and was placed on probation for a period of two years. On respondent's motion, the probation was terminated on June 4, 1978.

It is the Administrator's contention that in view of the serious nature of the offense upon which respondent's disbarment was based, insufficient time has passed "to afford the Court a meaningful opportunity to determine that petitioner has become a person fit to practice law." Respondent contends that he has established by clear and convincing evidence that he is rehabilitated and is a fit person to practice law and that the petition for reinstatement is not premature.

Our amendment of Rule 767 effective July 1, 1978 (73 Ill. 2d R. 767), to provide that a petition for reinstatement shall not be filed within a period of 3 years after the date of an order allowing disbarment on consent was recognition of the fact that the sanction is a serious one, not lightly imposed, and that a period of time must elapse sufficient to demonstrate that the disbarred attorney has been rehabilitated. However, as we pointed out in *In re Wigoda* (1979), 77 Ill. 2d 154, 158, "the period of time between a disbarment on consent and a petition for reinstatement is not dispositive of the determination of rehabilitation." We note further that more than 3 years have now elapsed since the disbarment.

The evidence presented to the Hearing Board was not contradicted by the Administrator. Indeed, in argument before the Hearing Board counsel for the Administrator stated that a thorough investigation had failed to uncover anything "which would preclude or argue against his reinstatement." Moreover, the Hearing Board in its find-

ings and recommendation characterized the testimony adduced by respondent as impressive and noted that it was elicited from persons whose experience made them good judges of moral rehabilitation. A priest who had known respondent since boyhood testified that since disbarment he had undergone a drastic change for the better, having deepened his religious experience and become emotionally more mature. The director of a treatment and training center for developmentally disadvantaged children testified that members of the staff looked to respondent for guidance. As a volunteer, respondent had performed well in a very difficult, stressful job, and had been with the center for nearly twice the average "turnover" time. The director testified that he felt respondent had a very good moral character. A circuit court judge and respondent's superior in the public defender's office also testified in his behalf. The supervisor testified that respondent was probably more remorseful than any person the supervisor had ever seen. The president of the manufacturing company by whom defendant was employed testified that he regularly entrusted respondent with large sums of money, and that, if reinstated, respondent would be asked to become the company's corporate attorney. Finally, respondent testified as to the shame and remorse which had stemmed from the incident. He testified that he had become active in his church and several worthy volunteer endeavors, and that his commitment to these activities would not end on reinstatement.

Disciplinary proceedings are designed to safeguard the public, maintain the integrity of the profession and protect the administration of justice from reproach. (*In re Saladino* (1978), 71 Ill. 2d 263, 275; *In re Nowak* (1976), 62 Ill. 2d 279, 283.) To further delay the reinstatement of an attorney shown to have been rehabilitated would serve no useful purpose. In view of the clear and convincing evidence of defendant's rehabilitation and fitness to practice law, the recommendation to reinstate him was

proper and we adopt it.

It is the order of this court that the respondent is reinstated to the roll of attorneys admitted to practice law in this State.

*Respondent reinstated.*

MR. JUSTICE CLARK, concurring:

I concur in the majority opinion.

We have permitted reinstatement where less than two years have elapsed between disbarment and the filing of the reinstatement petition, yet there was no dissent relating to the petition being premature. *In re Wigoda* (1979), 77 Ill. 2d 154.

In addition, prior to the adoption of Rule 767 on July 1, 1978 (73 Ill. 2d R. 767), we have allowed reinstatement where an attorney filed the petition within five years of disbarment, and my collegues did not see fit to register their disagreement. (*In re Thomas* (1979), 76 Ill. 2d 185.) (The instant petitioner voluntarily moved to have his name stricken from the master roll of attorneys, and that motion was allowed on July 28, 1976. His reinstatement occurs well over three years later.)

We have permitted reinstatement where the infraction was as serious as in this case, if not more so, and nothing was said in dissent about the seriousness of the offense. *In re Wigoda* (1979), 77 Ill. 2d 154.

Moreover, we have reinstated attorneys where the Review Board has recommended that the petition be denied, again, without any dissent being recorded. (*In re Nesselson* (1979), 76 Ill. 2d 135.) In the instant case, both the Hearing Board, and the Review Board (with one member dissenting), recommended that the petitioner be reinstated.

The rule has been quoted to the point where it is axiomatic that disciplinary proceedings are not designed to impose punishment, but are intended, as my learned colleague states, "to safeguard the public, maintain the in-

tegrity of the legal profession and protect the administration of justice." (78 Ill. 2d at 124.) That is not to say that all disbarred attorneys are to be reinstated. In certain situations, the offenses will be so grievous and wilful, and the likelihood that the offender will err again may be so great, that the attorney should not, and will not, be reinstated. But where, as here, the petitioner has carried the substantial burden of showing by clear and convincing evidence that he is rehabilitated (*In re Starr* (1976), 64 Ill. 2d 407, 415), I am at a loss to understand why my collegues chose this case in which to dissent, especially since the dissenting opinions provide no clue as to why this case is distinguishable from other recent cases decided by this court.

MR. JUSTICE UNDERWOOD, dissenting:

Respondent was disbarred on consent (58 Ill. 2d R. 762) by the July 28, 1976, order of this court. Disbarment resulted from his conduct while employed as an assistant public defender in Cook County. While assigned to represent a supposedly indigent defendant, respondent solicited $700 from his client on the false representation that payment of that amount to an assistant State's Attorney would guarantee favorable treatment for the client. Respondent intended, of course, to convert the money to his own use. Respondent's petition for reinstatement to the practice of law was filed on June 6, 1978, after his discharge from the probation upon which he had been placed following his conviction of solicitation to commit bribery.

Were respondent subject to our amended Rule 767 (73 Ill. 2d R. 767), he could not even file a petition for reinstatement sooner than 3 years from the date of disbarment. Considering the serious nature of the offense and the disregard manifested by respondent for the criminal laws of this State, the ethics of our profession,

and the reputation of fellow lawyers, I believe his reinstatement to be premature.

MR. JUSTICE RYAN joins in this dissent.

MR. JUSTICE WARD, also dissenting:

Less than two years after his admission to the bar the respondent was disbarred for having committed the grevous offense of attempted bribery while serving as assistant public defender. Less than two years after his disbarment he petitioned for reinstatement of the privilege to practice law. The majority states that to delay further respondent's reinstatement would serve no useful purpose in view of the clear and convincing evidence of his rehabilitation and fitness to practice law. I cannot agree. The first purpose of disciplinary proceedings is to safeguard the public, maintain the integrity of the legal profession and protect the administration of justice. I am not persuaded on the record before us that these ends will be met if the respondent at this time is reinstated. The question is, of course, not whether there should be compassion, but whether there can be confidence that the public interest will be safeguarded and the profession assured that the disciplined attorney has now a full understanding of important responsibilities. Lenity may be as great a disservice as a severity that is unwarranted. I join with Mr. Justice Underwood in his belief that reinstatement at this time is premature. I would add that if reinstatement were to be deferred it could deepen the respondent's understanding of the obligations of the bar and of the sensitive and vital role of the lawyer in society.

MR. JUSTICE RYAN joins in this dissent.